CONNIE SIX *v.* THOMAS O'CONNOR AND COMPANY ET AL.
(15218)

Peters, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued November 29, 1995—decision released January 23, 1996

*J. Sarah Posner*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*David A. Kelly*, for the appellees (named defendant et al.).

KATZ, J. The dispositive issue in this appeal is whether the named defendant, Thomas O'Connor and Company (defendant), timely notified the defendant Second Injury Fund (fund) of its intent to transfer its workers' compensation liability to the fund pursuant to General Statutes (Rev. to 1987) § 31-349 (a).[1] We

[1] General Statutes (Rev. to 1987) § 31-349 provides in relevant part: "Compensation for second disability. Payment of insurance coverage for totally incapacitated persons. (a) The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. *As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire.* Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing

conclude that the defendant failed to notify the fund timely and, therefore, could not transfer its liability to the fund.

The following facts are relevant to this appeal. On August 4, 1987, the plaintiff, Connie Six (claimant), suffered an injury to his left knee during the course of his employment with the defendant. Pursuant to General Statutes (Rev. to 1987) § 31-284 (a),[2] he filed a claim for workers' compensation with the defendant, which was granted, and received temporary total disability benefits from August 5, 1987, to April 23, 1990. Because the claimant had a preexisting impairment of his left knee, which, combined with the present injury, resulted

---

benefits under the provisions of this chapter. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ." (Emphasis added.)

"We look to the statute in effect at the date of injury to determine the rights and obligations between the parties. See *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). This rule applies to the employer's right to transfer liability to the fund pursuant to § 31-349. See *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 186–87 and n.2, 384 A.2d 363 (1978)." *Dos Santos* v. *F.D. Rich Construction, Inc.*, 233 Conn. 14, 16 n.1, 658 A.2d 83 (1995).

[2] General Statutes (Rev. to 1987) § 31-284 provides in relevant part: "Basic rights and liabilities. Civil action to enjoin noncomplying employer from entering employment contracts. (a) An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as follows . . . ."

in an injury "materially and substantially greater than that which would have resulted from the second injury alone"; General Statutes (Rev. to 1987) § 31-349 (a); the defendant notified the fund on April 24, 1990, of its intention to transfer liability to it.[3] The fund rejected the transfer because this notice had not been timely. On April 24, 1990, on the basis of a January 5, 1988 decision by Michael McCarty, the claimant's physician, to release the claimant to light duty work with limitations, the defendant also notified workers' compensation commissioner A. Paul Berte of its intention to discontinue payments retroactively as of January 5, 1988, by submitting a form 36 to Berte.[4] Subsequently, on May 21, 1990, McCarty set the claimant's maximum medical improvement at 40 percent, which converts to 95.2 weeks of permanent partial disability payments.

Following a formal hearing before workers' compensation commissioner Andrew P. Denuzze (commis-

---

[3] Section 31-354-9 (b) (1) of the Regulations of Connecticut State Agencies provides in relevant part: "Notice to the Fund shall:

"(A) Be sent to the custodian of the fund or his designee;

"(B) Be accompanied by a voluntary agreement or finding and award. . . .

"(C) Be accompanied by copies of all supporting medical reports; and

"(D) Contain a statement outlining the claim, type and amount of benefits paid to date or other proof of disability."

Although the defendant initially notified the fund by letter dated November 27, 1989, and received on November 30, 1989, the parties have stipulated that notice was not complete until April 24, 1990, when the voluntary agreement between the defendant and the claimant was received.

[4] Although finding five of workers' compensation commissioner Andrew P. Denuzze's findings of fact; see footnote 5; states that this notice to discontinue payments was effective retroactive to January 5, 1988, the fund contends on appeal that there is no evidence to support the finding that the notice was retroactive. As the fund recognizes, however, if the notice is applied retroactively, "the only result [of such a discontinuance] would be to terminate the entitlement to temporary total disability status. The granting of the Form 36 does not bear one way or another upon the issue of whether or not the claimant was temporarily partially disabled, which, according to the record in this case, [the] claimant clearly was. In fact, on the Form 36 there is an admission by the [defendant] that the claimant was released to 'light work' . . . ."

sioner) on October 5, 1992, to determine if notice to the fund had been timely, the commissioner adopted the defendant's proposed findings of fact and concluded that, because notice had been timely, liability would transfer to the fund. Thereafter, the commissioner granted the fund's motion to correct his previous ruling and, after altering some of his previous findings and adopting a new finding, reversed his prior decision and concluded that notice to the fund had not been timely.[5]

[5] The revised findings of fact are as follows:

"1. A Voluntary Agreement entered into between the parties approved by the First District Commissioner on 2/2/90 sets forth the jurisdictional facts of this claim.

"2. On August 4, 1987, the claimant, Connie Six, sustained an injury to his left knee, which arose out of and in the course of his employment with the respondent-employer, Thomas O'Connor & Co.

"3. The applicable average weekly wage for said injury is $428.00.

"4. As a result of this injury, the claimant received temporary total benefits from August 5, 1987 to April 23, 1990.

"5. Based on the release to work by the treating physician dated January 5, 1988, Commissioner Berte approved a Form 36 to discontinue benefits on 4/23/90, effective to 1/5/88.

"6. The Claimant has acknowledged that he was not entitled to these temporary partial benefits paid from January 5, 1988 in an agreement dated 2/20/92 and signed by the claimant.

"7. Prior to his injury of August 4, 1987, the claimant had a permanent, pre-existing physical impairment. Specifically, he had pre-existing osteophytic spurring and arthritis of both knees, a previous sprain and contusion of the left knee on May 25, 1987, and degenerative joint disease.

"8. Said pre-existing impairment combined with the injury of August 4, 1987 to leave the claimant with a permanent disability that is materially and substantially greater than that which would have resulted from the injury of August 4, 1987 alone.

"9. The employer and insurer respondents placed the Second Injury Fund on notice for relief in this matter pursuant to Connecticut General Statutes § 31-349 by letter dated 11/27/89. The Second Injury Fund acknowledged receipt of respondent's notice on 11/30/89. Notice was complete on or about 4/23/90 when the Voluntary Agreement was received.

"10. As a result of his injury, the claimant received 141 weeks and 3 days disability benefits from August 5, 1987 to April 23, 1990. A Voluntary Agreement was approved for Permanent Partial disability from 5/21/90 for 95.2 weeks. The respondent insurer makes no claim for the overpayment of temporary total paid from January 5, 1988 to April 23, 1990, which was paid as a result of his own error.

Pursuant to General Statutes § 31-301 (a),[6] the defendant appealed from this decision to the compensation review board (board), which reversed the commissioner's ruling. In reaching its conclusion, the board focused on the commissioner's finding six that "[t]he [c]laimant has acknowledged that he was not entitled to these temporary partial benefits paid from January 5, 1988 in an agreement dated 2/20/92 and signed by the claimant." From this finding, the board reasoned that, even though the claimant had received disability benefits after January 5, 1988, his acknowledgment that he was not entitled to them was in effect an acknowledgment that he was not disabled after that date. Furthermore, the board reasoned that the claimant's disability had not recommenced until May 21, 1990, the date of maximum medi-

"11. It is the Second Injury Fund's contention that the Respondent failed to timely place the Fund on notice for relief pursuant to Connecticut General Statutes § 31-349 in that the notice was not perfected 90 days before the 104th week of disability. The Second Injury Fund acknowledged receipt of notice on 11/30/89, with a Voluntary Agreement on 4/23/90. The 104 week period referred to in § 31-349 refers not to weeks of payments, but to weeks of disability.

"12. The employer and insurer respondents completed payments of 104 weeks for disability to the claimant on August 5, 1989.

"13. The claimant continued to be disabled after January 5, 1988 due to the work related injury to his left knee. Respondent has failed to prove that disability ceased prior to 90 days before expiration of the statutory 104 week period."

[6] General Statutes § 31-301 provides in relevant part: "Appeals to Compensation Review Board. Payment of award during pendency of appeal. (a) At any time within ten days after entry of an award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the Compensation Review Board by filing in the office of the commissioner from which the award or such decision on a motion originated an appeal petition and five copies thereof. . . .

"(b) The appeal shall be heard by the Compensation Review Board as provided in section 31-280b. The Compensation Review Board shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the Board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the Compensation Review Board may hear additional evidence or testimony. . . ."

cal improvement. Therefore, recognizing that the claimant had been disabled for twenty-one or twenty-two weeks between August 5, 1987, and January 5, 1988, the board reasoned that "if the weeks from January 5, 1988 to April 23, 1990, [the approximate date that notice was complete] are subtracted, then [the] claimant would have only received 21 or 22 weeks of disability by April 23, 1990.[7] Notice by the end of the 22nd week would have complied with the then § 31-349 requirement that notice be completed by the 91st week, i.e., ninety days before the expiration of the 104th week."

The fund appealed from the board's decision to the Appellate Court pursuant to General Statutes § 31-301b,[8] and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). The parties agree that § 31-349 requires that notice of a transfer must be completed ninety days prior to the expiration of the first 104 weeks of disability, or in the ninety-first week of disability. See *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 392–94, 618 A.2d 1340 (1993) (in order to transfer liability to fund notice must be complete ninety days prior to expiration of 104 weeks of disability and not payment of benefits). The parties also agree that notice was complete on April 24, 1990. The fund, relying on findings twelve and thirteen; see footnote 5; argues that notice was not timely. According to the fund, the claimant was continuously disabled from August 5, 1987. Therefore, in the fund's view, the 104 weeks expired in August,

---

[7] Although the parties have stipulated that notice was complete on April 24, 1990; see footnote 3; the commissioner, in his findings of fact; see footnote 5; and the board used April 23, 1990, as an approximate date. This difference of one day is insignificant.

[8] General Statutes § 31-301b provides: "Appeal of decision of Compensation Review Board. Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the appellate court."

1989, and notice was due in May, 1989. In response, the defendant focuses on finding six; see footnote 5; to claim that the board was correct in concluding that notice was timely. According to the defendant, disability began on August 5, 1987, and expired on January 5, 1988. Thereafter, in the defendant's view, disability did not recommence until the determination of the claimant's maximum medical improvement on May 21, 1990, and because notice was not due until September, 1991, the notice on April 24, 1990, was, therefore, timely. The fund disagrees with the defendant's interpretation of finding six, but nonetheless responds that even after removing the period of time referenced in finding six, notice was still late. Finding six is based solely on an agreement between the defendant and the claimant that states that "[t]here would seem to be no entitlement to any disability benefits from 1-5-88 until 9-25-88."[9] Therefore, the fund argues that, by eliminating that time period, the deadline for notice was extended from May, 1989, to January, 1990. Consequently, the notice on April 24, 1990, was untimely. We agree with the fund.

"At the outset, we must determine the appropriate standard of review when a decision of a commissioner is appealed to the compensation review [board]. A decision of a commissioner granting or denying an award may be appealed to the [board] pursuant to General Statutes [Rev. to 1987] § 31-301 (a), which provides in pertinent part: 'At any time within ten days after entry of such award by the commissioner . . . either party may appeal therefrom to the [board] . . . . Such appeal shall be heard by a panel of the [board] . . . . *The compensation review [board] shall hear the appeal*

---

[9] The fund also claims that because this agreement was never introduced into evidence as a full exhibit, but was introduced only as an exhibit for identification, the board improperly relied on it in reaching its decision. Because our resolution of this issue would have no effect on our conclusion, we need not reach it.

*on the record of the hearing before the commissioner,* provided, if it is shown to the satisfaction of the [board] that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the [board] may hear additional evidence or testimony. Upon the final determination of the appeal by the [board] . . . it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the [board] shall include its findings and award and conclusions of law. . . .'

"It is clear that under General Statutes § 31-301 (a) and § 31-301-8 of the Regulations of Connecticut State Agencies[10] the review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. Although the review [board] may take additional material evidence, this is proper only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not 'retry the facts.' See Regs., Conn. State Agencies § 31-301-8. We have stated: '[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. *Czeplicki* v. *Fafnir Bearing Co.,* 137 Conn. 454, 457, 78 A.2d 339 (1951). The conclusions drawn by him from the facts found must stand unless they result

[10] Section 31-301-8 of the Regulations of Connecticut State Agencies provides: "Function of compensation review [board]

"Ordinarily, appeals are heard by the compensation review [board] upon the certified copy of the record filed by the commissioner. In such cases the [board] will not retry the facts or hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusion reached. It cannot review the conclusions of the commissioner when these depend upon the weight of the evidence and the credibility of witnesses. Its power in the corrections of the finding of the commissioner is analogous to, and its method of correcting the finding similar to the power and method of the Supreme Court in correcting the findings of the trial court."

from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. *Mathurin* v. *Putnam*, 136 Conn. 361, 366, 71 A.2d 599 (1950).' *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 117–18, 411 A.2d 924 (1979); *Murchison* v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 145, 291 A.2d 743 (1972). . . .

" 'It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted. See *Boehm* v. *Commissioner*, 326 U.S. 287, 293 [66 S. Ct. 120, 90 L. Ed. 78 (1945)]. It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. . . .' " (Emphasis in original.) *Fair* v. *People's Savings Bank*, 207 Conn. 535, 538–40, 542 A.2d 1118 (1988); accord *Crochiere* v. *Board of Education*, 227 Conn. 333, 346–47, 630 A.2d 1027 (1993); *Hernandez* v. *Gerber Group*, 222 Conn. 78, 81–82 n.3, 608 A.2d 87 (1992).

Applying these principles to the facts of this case, we conclude that there is sufficient evidence in the record[11] from which the commissioner could reasonably have concluded that notice had not been timely and that the board acted improperly in reversing the commissioner's decision. During the hearing, in response to the commissioner's question regarding the choice of dates in the agreement upon which finding six is based, the defendant responded that the first date, January 5, 1988, corresponds to the date that the claimant had been released to light duty work and that the second

---

[11] The certified record of the hearing before the commissioner considered on appeal consisted of, inter alia, the transcript from the formal hearing, a series of exhibits, and the commissioner's findings of fact and conclusions.

date, September 25, 1988, had been chosen because there are "medical reports that would suggest [that] around [that date], disability may have worsened." By stating that the claimant's disability may have worsened around September 25, 1988, the defendant, in effect, admitted that the claimant had been disabled to some degree up to that point. In addition, there are medical reports spanning the date of injury through 1990 that indicate that the claimant was disabled to some degree throughout this period.[12] Notably, McCarty's decision to release the claimant on January 5, 1988, to light duty work with conditions confirms that the claimant was still disabled after January 5, 1988. If the claimant were no longer disabled, there would have been no reason to restrict his work options. Therefore, because the claimant continued to be disabled after January 5, 1988, notice to the fund was due either in May, 1989, or in January, 1990, depending on whether the commissioner eliminated the period set out in the agreement upon which finding six is based.

---

[12] The claimant has been diagnosed as having "a medial meniscal tear and areas of chondromalacia of the medial femoral condyle." An October 7, 1987 report prepared by McCarty indicates that the claimant had "pain, swelling, and popping" in his knee, and recommends that he avoid "persistent walking, bending, lifting, [and] climbing stairs" and that he be placed on temporary total disability. On October 22, 1987, the claimant "continue[d] to have lateral jointline pain, periodic swelling to his knee, increasing pain with ambulation and mobilization." He remained on temporary total disability until January 5, 1988. On this date, he was released to light duty work with "limitations of no repetitive knee bending activities such as squatting, climbing, or prolonged walking or standing, or walking on uneven surfaces." On February 21, 1989, he could "only walk to his mailbox and back . . . and [used] a cane." On July 31, 1989, "[h]is activity level [was] to the point where he [used] a cane part of the time. He [could] only walk about 1/2 block without increasing pain to his knee. . . . He [was] unable to mow his lawn, or to get on his riding lawnmower because of the knee pain." On August 24, 1989, his knee gave way while walking down some stairs. On May 15, 1990, McCarty reported that the claimant had "progressive post-traumatic arthritis to the left knee" and continued to experience pain and swelling and to have difficulty bending at the knee and walking more than a few blocks.

Because we are required to afford great deference to the commissioner's conclusion that notice to the fund had not been timely, provided that it is reasonably based on the evidence before him, we must interpret finding six with the goal of sustaining that conclusion in light of all of the other supporting evidence. Therefore, we interpret finding six to mean that the commissioner found that, as a matter of fact, *the claimant* had acknowledged that he had not been entitled to disability benefits. The commissioner did not, however, state that *he* found, as a matter of fact, that the claimant had not been entitled to such benefits.[13] If we were to adopt the latter interpretation, which comports with the defendant's position, we would necessarily need to overlook finding thirteen and the majority of the evidence before the commissioner that indicated that the claimant had been disabled after January 5, 1988, in specific, the medical reports, including McCarty's decision to release the claimant to light duty work, as well as the defendant's statement at the hearing regarding its agreement with the claimant that the claimant was disabled after January 5, 1988. Because the board, and we in turn, must not disturb the commissioner's conclusion as long as it is sustainable by the underlying facts, we view finding six as simply a recitation by the commissioner of a statement made by the claimant and not as an adoption by the commissioner of the substance of the statement.

Our review of the record indicates that the commissioner's determination that notice to the fund had not been timely was not based on an incorrect application

---

[13] Another example of the commissioner finding, as a matter of fact, what a party did or what a party claims, instead of what he necessarily found to be true, is finding eleven, which states that "[i]t is the [fund's] *contention* that the [defendant] failed to timely place the [fund] on notice . . . ." (Emphasis added.) This is in contrast with, for example, findings seven through ten, and twelve and thirteen, which are conclusions that the commissioner necessarily found to be substantively true.

of the law to the subordinate facts or on an inference illegally or unreasonably drawn from those facts. Therefore, it was improper for the board to reverse the commissioner's decision. Consequently, we reverse the decision of the board and conclude that, because the commissioner reasonably concluded that notice to the fund had not been timely, liability could not transfer to it.

The decision is reversed and the case is remanded to the compensation review board with direction to affirm the decision of the compensation commissioner.

In this opinion the other justices concurred.