# JOSEPH FIMIANI *v.* STAR GALLO DISTRIBUTORS, INC., ET AL.
## (SC 15960)

Callahan, C. J., and Borden, Berdon, Katz and Palmer, Js.

Argued February 17—officially released May 11, 1999

*David D. Chapman,* for the appellants (named defendant et al.).

*Richard R. Hine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough* and *Anthony Jannotta,* assistant attorneys general, for the appellee (defendant second injury fund).

*Opinion*

CALLAHAN, C. J. In 1987, the plaintiff, Joseph Fimiani (claimant), suffered two related injuries in the course of his employment with the named defendant, Star Gallo Distributors, Inc. (Star Gallo). The dispositive issue in this certified appeal is whether General Statutes (Rev. to 1987) § 31-349[1] requires the defendant second

---

[1] "We look to the statute in effect at the date of injury to determine the rights and obligations between the parties. . . . This rule applies to the employer's right to transfer liability to the fund pursuant to § 31-349." (Internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.,* 235 Conn. 790, 791–92 n.1, 669 A.2d 1214 (1996). General Statutes (Rev. to 1987) § 31-349 (a) provides in relevant part: "If an employee who has previously incurred . . . [a] permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards

injury fund (fund) to accept liability only for that portion of the workers' compensation disability benefits due the claimant that is attributable exclusively to his second injury. We conclude that § 31-349 requires the fund to accept liability for all disability benefits due the claimant, not just that portion of compensation benefits that is attributable to his second injury.

The following facts and procedural history are undisputed. On January 6, 1987, the claimant injured his lumbar spine (first injury) in the course of his employment. On that date, the defendant Nationwide Mutual Insurance Company (Nationwide)[2] was Star Gallo's workers' compensation insurance carrier. The claimant filed a timely application for workers' compensation benefits.[3] Nationwide accepted liability for the claim and, on February 24, 1987, the workers' compensation commissioner for the third district (commissioner) approved a voluntary agreement awarding the claimant temporary total disability benefits.[4] Pursuant to that agreement, Nationwide paid the claimant weekly workers' compensation benefits in the amount of $428 until his return to regular work activity at Star Gallo on February 5, 1987.

On November 30, 1987, the claimant sustained a second lumbar spine injury (second injury) in the course of

of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . . Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ." Unless otherwise noted, all references herein to § 31-349 are to that statute as revised to 1987.

[2] There were four defendants in this action: Star Gallo, the employer; Nationwide, Star Gallo's workers' compensation insurer on January 6, 1987; Liberty Mutual Insurance Company, Star Gallo's workers' compensation insurer on November 30, 1987; and the second injury fund. This appeal presents a controversy between Star Gallo and Nationwide on the one hand, and the fund on the other hand. The claimant and Liberty Mutual Insurance Company did not file briefs with this court. References to Nationwide include its insured, Star Gallo.

[3] See General Statutes (Rev. to 1987) § 31-294.

[4] See General Statutes (Rev. to 1987) § 31-307.

his employment. On that date, Liberty Mutual Insurance Company (Liberty) was Star Gallo's workers' compensation insurance carrier. The claimant filed a timely application for workers' compensation benefits. Liberty contested its liability for the claimant's second injury, maintaining that the second injury was merely a recurrence of his first injury, not a separate injury, and that, consequently, pursuant to General Statutes (Rev. to 1987) § 31-307b,[5] Nationwide was responsible for providing coverage for the claimant's second injury. Nationwide argued, however, that the second injury was a separate injury, not a recurrence of the first injury, and that, pursuant to § 31-349, Liberty was responsible for providing coverage for the second injury.[6]

This dispute was the subject of informal hearings before the commissioner. At the informal hearings, the two insurers presented conflicting medical opinions regarding the cause of the claimant's second injury. Liberty relied on medical opinion that indicated that the claimant's second injury was a recurrence; Nationwide relied on medical opinion that indicated that the second injury was a new injury. After the hearings, but before the commissioner had ruled, Liberty and Nationwide entered into an agreement whereby Liberty agreed to accept responsibility for the claimant's second injury and Nationwide agreed to reimburse Liberty for 75 percent of any benefits Liberty paid to the claimant in connection with his second injury. Thereafter, Liberty accepted liability for the claimant's second injury, and a voluntary agreement awarding the claimant permanent

---

[5] General Statutes (Rev. to 1987) § 31-307b provides in relevant part: "If any employee who receives benefits under section 31-307 returns to work after recovery from his injury and subsequently suffers total or partial incapacity caused by a *relapse* from the recovery from, or a *recurrence* of, such injury, such employee shall be paid a weekly compensation . . . ." (Emphasis added.)

[6] See footnote 1 of this opinion.

partial disability benefits for the second injury was approved by the commissioner on November 13, 1989.[7]

Pursuant to the approved voluntary agreements, Liberty paid benefits to the claimant for a period of 104 weeks.[8] Liberty then sought to transfer liability for the entire claim to the fund pursuant to § 31-349. The fund, however, agreed to accept liability only for 25 percent of the benefits payable to the claimant. The fund maintained that Nationwide was obligated to pay the remaining 75 percent of the benefits due the claimant. On July 12, 1994, at Nationwide's request, the commissioner held a formal hearing on the issue of whether Nationwide or the fund was responsible for payment of the remaining 75 percent of those benefits. The commissioner found that the claimant's second injury was a separate injury, not a recurrence of his first injury, and that the claimant's first injury was a "substantial factor in [his] disability." Concluding that § 31-349 (a) permitted an allocation between the fund and Nationwide of the benefits due the claimant, the commissioner

[7] On October 12, 1989, the commissioner had approved a voluntary agreement that obligated Liberty to pay the claimant weekly temporary total disability benefits in the amount of $506.60. See General Statutes (Rev. to 1987) § 31-307.

On November 13, 1989, the commissioner approved a substitute voluntary agreement that obligated Liberty to pay the claimant weekly disability benefits in the amount of $486.60 for a period of seventy-eight weeks. That agreement provides that the claimant suffered a 15 percent permanent partial lumbar injury and that maximum medical improvement had been reached on April 13, 1989. See General Statutes (Rev. to 1987) §§ 31-308 (b), 31-309 and 31-295 (c).

On March 11, 1993, the commissioner approved a further voluntary agreement that obligated Liberty to pay the claimant weekly disability benefits in the amount of $486.60 for a period of twenty-six weeks. The agreement states that the claimant suffered a 20 percent permanent partial lumbar injury, 5 percent of which was attributable to recent surgery, and that maximum medical improvement had been reached on January 11, 1993. See General Statutes (Rev. to 1987) §§ 31-308 (b), 31-309 and 31-295 (c).

[8] In accordance with its agreement with Liberty, Nationwide reimbursed Liberty for 75 percent of the benefits Liberty paid to the claimant pursuant to the November 13, 1989 voluntary agreement.

ordered the fund to accept liability for only 25 percent of the claim and Nationwide to accept liability for the remaining 75 percent of the benefits due the claimant.[9]

Nationwide appealed from the commissioner's decision to the compensation review board (board) pursuant to General Statutes § 31-301.[10] The board concluded that § 31-349 required the fund to accept liability for payment of *all* benefits due the claimant, without allocation, and reversed the commissioner's decision. The fund appealed from the decision of the board to the Appellate Court pursuant to General Statutes § 31-301b.[11] Concluding that, "in cases where an employee has suffered two separate compensable injuries that have contributed to cause a disability, and liability for that disability can be apportioned between the two injuries by the trial commissioner, the apportionment may also be extended to the liability imposed on the fund by § 31-349," the Appellate Court reversed the board's decision. *Fimiani* v. *Star Gallo Distributors, Inc.*, 48 Conn. App. 474, 480–81, 710 A.2d 1374 (1998).

Thereafter, Nationwide petitioned this court for certification to appeal from the judgment of the Appellate Court. We granted certification limited to the following question: "Under the circumstances of this case, did

[9] The commissioner ordered the fund to administer the entire claim after transfer, and required Nationwide to reimburse the fund for 75 percent of the total benefits paid to the claimant after transfer. The commissioner further ordered the fund to reimburse Liberty for 25 percent of payments Liberty had made to the claimant after the 104 week period expired, and Nationwide to reimburse Liberty for 75 percent of those payments.

[10] General Statutes § 31-301 provides in relevant part: "(a) At any time within ten days after entry of an award by the commissioner, [or] after a decision of the commissioner upon a motion . . . either party may appeal therefrom to the Compensation Review Board . . . ."

[11] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

the Appellate Court properly conclude that, pursuant to General Statutes [Rev. to 1987] § 31-349, the second injury fund was liable only for that percentage of the claimant's total disability attributable to his second injury?" *Fimiani* v. *Star Gallo Distributors, Inc.*, 245 Conn. 912, 718 A.2d 17 (1998). We answer the certified question in the negative and, accordingly, reverse the judgment of the Appellate Court.

As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Neither the review board nor this court has the power to retry facts. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996)." (Internal quotation marks omitted.) *Doe* v. *Stamford*, 241 Conn. 692, 696–97, 699 A.2d 52 (1997). "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. *Doe* v. *Stamford*, supra, 697; see *Davis* v.

*Norwich,* supra, 317." (Internal quotation marks omitted.) *Dowling* v. *Slotnik,* 244 Conn. 781, 798, 712 A.2d 396, cert. denied, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). The issue of whether § 31-349 permits the fund to accept liability only for the portion of benefits due a claimant that is attributable solely to the claimant's second injury has not been subject previously to judicial review and is a question of law involving the interpretation of the relevant statutory provisions. Consequently, we afford the conclusion of the board no special deference.

We begin our analysis by noting that interpretation of § 31-349 is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *General Motors Corp.* v. *Dohmann,* 247 Conn. 274, 286, 722 A.2d 1205 (1998); *Ferrigno* v. *Cromwell Development Associates,* 244 Conn. 189, 195, 708 A.2d 1371 (1998).

"As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." *In re Baby Z.,* 247 Conn. 474, 498, 724 A.2d 1035 (1999); *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.,* 239 Conn. 93, 102, 680 A.2d 1321 (1996). General Statutes (Rev. to 1987) § 31-349 (a), which sets forth the statutory scheme relating to compensation for a second injury, provides in relevant part that the "employer by whom the employee is employed at the time of the [second] injury . . . [shall] pay *all* awards of compensation and *all* medical expenses . . . for the

first one hundred four weeks of disability. . . . Thereafter *all* responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ." (Emphasis added.) Thus, by its terms, § 31-349 requires the employer at the time of the second injury to pay all benefits during the first 104 weeks of the claimant's disability. Thereafter, the fund similarly is required to accept "all responsibility" for the benefits due the claimant.

Moreover, the legislative history and genealogy of § 31-349 indicate that the legislature intended that the fund accept responsibility for all compensation benefits due a claimant for the claimant's injury. The Workers' Compensation Act has been a part of our law since 1913. See Public Acts 1913, c. 138; *Dowling* v. *Slotnik*, supra, 244 Conn. 803. As originally enacted, the workers' compensation law "require[d] an employer to assume total liability for any work related injury suffered by an employee even if the severity of such an injury had been aggravated by a preexisting disability. . . . Employers therefore hesitated to hire handicapped persons because if a previously injured or disabled employee were then injured on the job, the employer would be required to compensate the employee for the entire resulting disability even though the severity of the second injury might have been attributable substantially to the preexisting condition." (Citations omitted.) *Davis* v. *Norwich*, supra, 232 Conn. 319–20. In 1919, however, the legislature amended the workers' compensation law to limit employers' liability in such cases. Specifically, Public Acts 1919, c. 142, § 1, as subsequently codified at General Statutes (1930 Rev.) § 5223, provided: "In the case of aggravation of a pre-existing disease, compensation shall be allowed only for such proportion of the disability or death due to the aggravation of such pre-existing disease as may be reasonably attributed to the injury upon which the claim is based. . . ." Thus,

the effect of § 5223 was to protect employers from paying for the proportion of the disability attributable to the preexisting injury. See *Cashman* v. *McTernan School, Inc.*, 130 Conn. 401, 404, 34 A.2d 874 (1943); *Henry* v. *Keegan*, 121 Conn. 71, 74–76, 183 A. 14 (1936).

In 1945, the legislature established the second injury fund. Public Acts 1945, No. 188, § 1,[12] provided in relevant part: "[An employee who sustains a second injury] shall be paid compensation by his employer for such incapacity to work, and for the specific loss of, or loss of use of, any of said members or organ, *due to the subsequent injury* . . . . After the completion of payments due from his employer, he shall be paid additional weekly compensation during the continuance of his incapacity . . . . Such additional compensation shall be paid out of the fund . . . ." (Emphasis added.) "[B]y creating the fund, the legislature intended to [protect] employers from the hardship of liability for those consequences of compensable injury *not attributable to their employment* . . . *Civardi* v. *Norwich*, [231 Conn. 287, 293, 649 A.2d 523 (1994)], quoting *Hernandez* v. *Gerber Group*, [222 Conn. 78, 82, 608 A.2d 87 (1992)]; *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 185, 384 A.2d

---

[12] Public Acts 1945, No. 188, § 1, codified as General Statutes (Cum. Sup. 1945) § 947h, provides in relevant part: "If an employee who has previously incurred, by accidental injury, disease or congenital causes, permanent partial incapacity by means of the total loss of, or the total loss of use of, one hand, one arm, one foot, one leg or one eye, or the reduction of sight in one eye to one-tenth or less of normal vision with glasses, sustains an injury for which compensation is provided under this chapter which results in permanent total incapacity by means of the loss of, or the loss of use of, another of said members, or eye, or the reduction of sight in the other eye to one-tenth or less of normal vision with glasses, he shall be paid compensation by his employer for such incapacity to work, and for the specific loss of, or loss of use of, any of said members or organ, due to the subsequent injury in accordance with the provisions of section 5237 as amended. After the completion of payments due from his employer, he shall be paid additional weekly compensation . . . . Such additional compensation shall be paid out of the fund . . . ."

363 (1978); *Jacques* v. *H. O. Penn Machinery Co.*, [166 Conn. 352, 356, 349 A.2d 847 (1974)]; 2 A. Larson, Workmen's Compensation Law (1994) § 59.31 (a), p. 10-492.399 and § 59.34 (a) (1), p. 10-528; especially considering that the combined effect of a successive injury to someone with a preexisting disability can far exceed the combined allowances for each injury existing separately. *Civardi* v. *Norwich*, supra, 294." (Emphasis added; internal quotation marks omitted.) *Davis* v. *Norwich*, supra, 232 Conn. 320. Thus, under the second injury scheme enacted in 1945, an employer was required to pay only that portion of benefits that were attributable to the second injury, and the fund was required to pay any compensation that was attributable to the claimant's prior injury.

In 1967, the legislature revised the statutory scheme governing the second injury fund. Public Acts 1967, No. 842, § 20, which is codified at § 31-349, provides in relevant part: "If an employee who has previously incurred . . . [a] permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, and necessary medical care . . . notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first *one hundred four weeks of disability.* . . . Thereafter all responsibility for compensation shall be with the custodian of the

second injury fund. . . ." (Emphasis added.) Thus, Public Acts 1967, No. 842, § 20, amended the statutory scheme governing the second injury fund to include, inter alia, the present limitation of the second injury employer's liability to 104 weeks. *"This allocation of liability was intended to charge the employer only with an approximation of those benefits attributable solely to the second, employment related injury.* By charging the employer with a predetermined period of 104 weeks of liability, the legislature sought to eliminate the administrative problems inherent in a case-by-case apportionment process. A. Larson, supra, § 59.34 (b), p. 10-553." (Emphasis added.) *Davis* v. *Norwich,* supra, 232 Conn. 321. In adopting this apportionment scheme, "the legislature . . . implicitly determined that any compensation that must be paid after the initial 104 weeks is attributable to the preexisting injury or the aggravated result of the preexisting condition and the second injury combined. See A. Larson, supra, §§ 59.31 (a) and 59.34 (a) (1). The 104 week period constitutes the following allocation of liability by the legislature: (1) 104 weeks of benefits are allocated to the *second,* work related injury and are therefore the [second] employer's responsibility; and (2) any benefits paid after the initial 104 week period are attributable to *the preexisting injury,* are not the [second] employer's responsibility and may be transferred to the fund." (Emphasis added.) *Davis* v. *Norwich,* supra, 323.

The fund, nevertheless, maintains that it is responsible for the portion of the benefits that is attributable only to the *second* injury, and that Nationwide is still responsible for the portion of those benefits that is attributable to his first injury. To support this contention, the fund relies on the provision of § 31-349 (a) that provides: "[The claimant] shall receive compensation for the entire amount of disability . . . less any compensation benefits payable or paid with respect

to the previous disability . . . ." Specifically, the fund argues that the phrase "less any compensation benefits payable or paid with respect to the previous disability" indicates an intention by the legislature to hold the first injury employer liable for compensation relating to the first injury.

The language on which the fund relies was added to § 31-349 in 1979. Public Acts 1979, No. 79-376, § 80 (P.A. 79-376). Prior to that amendment, General Statutes (Rev. to 1979) § 31-349 provided in relevant part: "If an employee who has previously incurred . . . [a] permanent physical impairment, incurs a second disability . . . resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, and necessary medical care . . . notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . ." Thus, prior to 1979, the express language of § 31-349 permitted a claimant who had suffered a second permanent disability to recover benefits for the *entire amount of that injury* without regard to whether the claimant previously had been awarded permanent disability benefits for his first injury.

In 1979, however, the legislature, by adopting P.A. 79-376, amended General Statutes (Rev. to 1979) § 31-349 (a) to provide in relevant part: "If an employee who has previously incurred . . . [a] permanent physical impairment, incurs a second disability . . . resulting in a permanent disability caused by both conditions

which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care . . . notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the [second] injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. . . ." General Statutes (Rev. to 1981) § 31-349.

The legislative history and genealogy of P.A. 79-376 indicate that the phrase "less any compensation benefits payable or paid with respect to the previous disability" was intended to prevent claimants who previously had been awarded partial permanent compensation benefits pursuant to General Statutes §§ 31-308 (b), 31-309 and 31-295 (c) for a first work-related injury from recovering duplicative compensation for that first injury pursuant to § 31-349. In 1978, a commission, established pursuant to Public Acts 1975, No. 75-622, recommended to the General Assembly that § 31-349 be revised so that the "compensation for the subsequent disability will be limited to the *increase of the disability*." (Emphasis added.) Report of the Commission to Study and Make Recommendations for the Workmen's Compensation System of the State to the General Assembly (1978), p. 29. The commission recommended this revision because § 31-349 then permitted claimants to recover compensation for the entire amount of a second disability without regard to whether the claimant previously had been awarded permanent disability benefits

for a prior work-related disability. Id.[13] During the discussion on the floor of the House of Representatives of Substitute House Bill No. 7307, the bill enacted as P.A. 79-376 and codified at § 31-349, Representative Richard J. Balducci gave the following example: "Let's say if an individual loses a finger and then somewhere along the line in the course of work is compensated for that loss, he loses an additional three fingers, plus the thumb, he would be compensated for the loss of the three fingers and the thumb, not the entire hand." 22 H.R. Proc., Pt. 15, 1979 Sess., p. 5054.

Furthermore, in 1993, pursuant to Public Acts 1993, No. 93-228, § 24 (P.A. 93-228), the legislature amended General Statutes (Rev. to 1993) § 31-349 to provide that the phrase " 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation." General Statutes (Rev. to 1995) § 31-349 (a). During the committee hearing on Substitute House Bill No. 7172, the bill that eventually was enacted as P.A. 93-228, Jesse Frankl, a commissioner and the chairman of the workers' compensation commission, remarked that the phrase "less any compensation benefits payable or paid with respect to the previous disability" was intended to apply to the *increase in permanency rating* of a disability. See Conn. Joint Standing Committee Hearings, Labor and Public Employees, 1993 Sess., Pt. 4, p. 1213.[14] We conclude, therefore, that P.A. 79-376 was intended to limit

[13] To the extent that the commission's recommendations served as a basis for P.A. 79-376, its report is illustrative of the legislature's intent. See *Ensign-Bickford Realty Corp.* v. *Zoning Commission*, 245 Conn. 257, 272, 715 A.2d 701 (1998); *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 510, 636 A.2d 1342 (1994).

[14] "We have previously considered subsequent enactments in order to illuminate the legislature's intent with respect to prior legislative action."

the liability of both the second employer and the fund by requiring that, in calculating the amount of benefits due the claimant for the claimant's second injury, a deduction be taken for any compensation benefits that the claimant already is entitled to recover for his first injury pursuant to §§ 31-308 (b), 31-309 and 31-295 (c).[15] Public Act 79-376 was not intended to replace the statutory apportionment scheme under which: (1) the first 104 weeks of benefits for the second injury are attributed to the second injury and are the responsibility of the second employer; and (2) all subsequent benefits for the second injury are attributed to the first injury and are the responsibility of the fund.

Finally, we note that under the fund's proposed construction of § 31-349 (a), even though the first employer would be responsible for benefits attributed to the claimant's first injury, the second employer still would be permitted to transfer liability for benefits attributed to the second injury to the fund. Thus, the second employer would be relieved of responsibility for bene-

---

(Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 393, 618 A.2d 1340 (1993); *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 344–45, 612 A.2d 1203 (1992).

[15] See J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 46–47, which provides the following illustration regarding the operation of § 31-349: "For example, suppose that a person seeking employment has preexisting low back problems which, if rated by a physician, would result in a finding of a 10% permanent partial disability. After securing the job that same person suffers an on-the-job traumatic injury . . . [that] substantially contributes to an exacerbation of his low back condition. As a result of that exacerbation the employee's permanent partial disability rate is 20%. That employee is entitled to the same amount, nature and kind of benefits as if the work incidents have been the sole and exclusive agent of his injury and disability. He is even entitled to a specific indemnity award for the full 20% permanent partial disability. . . . There is, of course, *a setoff for any prior specific indemnity workers' compensation awards the employee may have received for the preexisting 10% permanent partial disability*. However, such setoff . . . is [based] on a *degree of disability* basis. That is, the present employer would pay the current rate for the *incremental 10%* caused by his employment." (Emphasis added.)

fits that are solely attributable to the second injury. We can discern no basis for allowing second employers to escape liability by transferring to the fund after the 104 week period has elapsed responsibility for that portion of a claimant's benefits that is completely attributable to his second employment. "It is . . . a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *Ensign-Bickford Realty Corp.* v. *Zoning Commission*, 245 Conn. 257, 270, 715 A.2d 701 (1998); *Ferrigno* v. *Cromwell Development Associates*, supra, 244 Conn. 201.

We conclude that § 31-349 (a) requires the employer at the time of a claimant's second injury to accept liability for all of the compensation benefits due the claimant for a period of 104 weeks. Thereafter, § 31-349 requires the fund to accept liability for all of the benefits due the claimant for the combined injuries. Section 31-349 further requires that, in calculating the amount of benefits due the claimant, a deduction be taken for any permanent disability benefits the claimant already is entitled to recover for his first injury pursuant to §§ 31-308 (b), 31-309 and 31-295 (c).

There is no claim in the present case that the claimant already is entitled to recover permanent disability benefits for his first injury, and, therefore, no further proceedings are required before the commissioner.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the decision of the board insofar as the board concluded that § 31-349 requires the fund to accept liability for all benefits due the claimant.

In this opinion the other justices concurred.