[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Angel Martinez files this appeal from a final decision of the Department of Mental Retardation ("DMR") denying him services on the basis that he was not mentally retarded. The appeal is brought pursuant to the Uniform Administrative Procedures Act ("UAPA") General Statutes § 4-166 et seq.,4-183. CT Page 10073
The plaintiff, in January of 1997, when he was eighteen years of age, applied for services with DMR. DMR, on February 10, 1997 denied his application for services finding him ineligible. The plaintiff, on March 20, 1997, requested a hearing on the issue of his eligibility. A hearing was held on April 17, 1997. DMR made a final decision following the hearing on June 10, 1997. This decision was appealed pursuant to the UAPA to the Superior Court. In a Memorandum of Decision dated April 27, 1998 (the Superior Court (DiPentima, J.) sustained the appeal and remanded the plaintiffs application to DMR for their consideration of the full October 23, 1991 psychological evaluation of the plaintiff performed by Priscilla Vargas. This full evaluation had not been part of the record in the original appeal.
The hearing officer, pursuant to the Superior court remand, again considered plaintiffs application in view of the full October 23, 1991 psychological evaluation and again concluded that he was ineligible for DMR services. The hearing officer's amended proposed decision of June 12, 1998 was sent to all parties pursuant to UAPA § 4-179. The plaintiffs counsel, on July 6, 1998. submitted a detailed response to the proposed decision which was considered by the DMR Commissioner, who ultimately adopted the proposed decision as the agency's final decision denying the plaintiff services.
The plaintiff filed a timely UAPA appeal on September 14, 1998. The answer and record were filed by the agency on November 5, 1998. Briefs were filed by the plaintiff on January 27, 1999 and July 6, 1999. The defendant filed briefs on February 22, 1999 and June 29, 1999. The parties were heard in oral argument on July 8, 1999.[1]
At the outset, the court notes the "standard of review for all of the plaintiffs claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its CT Page 10074 discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny., the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) Bezzini v. Dept. of Social Services,49 Conn. App. 432, 436 (1998).
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial co. . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
"Mental retardation" is statutorily defined in § 1-1g(a) as "a significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period." Section 1-1g(b) provides:
As used in subsection (a), "general intellectual functioning" means the results obtained by assessment with one or more of the individually administered general intelligence tests CT Page 10075 developed for that purpose and standardized on a significantly adequate population and administered by a person or persons formally trained in test administration; "significantly sub-average" means an intelligence quotient more than two standard deviations below the mean for the test; "adaptive behavior" means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected for the individual's age and cultural group; and "developmental period" means the period of time between birth and the eighteenth birthday.
The issue in this case is whether Angel Martinez is mentally retarded as that term is statutorily defined. In reviewing the agency's determination, the court will review the record to determine if substantial evidence in the record supports the DMR conclusion that the plaintiff was not mentally retarded.
The proposed final decision which was adopted as the agency's final decision includes extensive consideration of the plaintiffs history, which includes evidence of social deprivation, physical abuse, emotional abuse, and educational deprivation. The plaintiff, during his elementary school years, was kept out of educational programs by his family. The plaintiff has a language disability and substantial deficits in adaptive behavior. He has a significant criminal history. Psychological evaluations performed over the course of various years show wide discrepancies in test score results.
A psychological evaluation of October 23, 1991 found that the plaintiff achieved "at least low average ability. . ." It was also noted in this evaluation that "Angel presents as a youngster with an uneven intellectual profile which is difficult to establish as his true level of intellectual ability". No diagnosis of mental retardation is made in the psychological assessment of October 1991. A September 25, 1995 evaluation showed Angel performing in the normal range of intelligence. Also a April 1, 1996 evaluation showed Angel performing in the low average range of intelligence. Both of these evaluations were on the Escala de Intelligencia Wechsler para Adultos (EIWA-WAIS, Spanish Edition). The ETWA was normed in 1968 and is generally believed to somewhat overestimate intelligence. There is no evidence to indicate the extent of adjustment which would be appropriate. CT Page 10076
Tests administered on June 14, 1995 and December 3, 1996 show the plaintiff achieving at an I.Q. of below 70. These tests were translated on an ad hoc basis into Spanish and are not viewed as standardized tests. A test on April 15, 1997 also showed Angel having a test score of under 70, but this test is not viewed as a I.Q. test and was performed after his 18th birthday. Section1-1g(b) defines the developmental period as the time between birth and the eighteenth birthday.
The hearing officer noted that despite reports of Angel's distorting reality, having disorganized thinking, a language disability, and a history of educational, social deprivation, he was still able to perform within at least a low average range of intelligence on at least three psychological evaluations.
This case is resolved by application of the substantial evidence test in that substantial evidence in the form of three test results indicate that he was not evidencing "significantly sub-average" general intellectual functioning. There is substantial evidence in the record that supports the agency determination that Angel Martinez was ineligible for DMR services.
Plaintiff argues that § 1-1(g)'s reference to assessment with one or more general intelligence tests, requires a finding of mental retardation if any test result is significantly sub-average.
Our Supreme Court has directed that with respect to statutory construction:. . . . our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative policy it was designed to implement and its relationship to existing legislation and common law principles governing the same general subject matter."Fimiani v. State Gallo Distributors, Inc., 248 Conn. 635, 642
(1999).
The language of § 1-1(g) is clearly directed at "general intellectual functioning existing concurrently with defects in adaptive behavior". This focus would be subverted by a construction of the statute which found "mental retardation" based solely on the results of a single test result.
The decision is affirmed and the appeal is dismissed. CT Page 10077
Robert F. McWeeny, J