PETER KELLEY *v.* NEW ENGLAND RAILROAD
CONSTRUCTION COMPANY, INC., ET AL.
(AC 15947)

O'Connell, Hennessy and Mihalakos, Js.

Argued February 27—officially released June 17, 1997

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant second injury fund).

*Timothy E. Welsh,* for the appellee (named defendant et al.).

*Opinion*

MIHALAKOS, J. The question presented in this appeal is whether the compensation review board improperly affirmed the trial commissioner's determination that the notice of the defendant Wausau Underwriters Insurance Company (insurer) to the second injury fund (fund) of its intent to transfer liability to the fund was timely under the requirements of General Statutes § 31-349.[1] We conclude that the insurer failed to notify the fund in a timely manner and, therefore, could not transfer its liability to the fund.

The following facts are relevant to this appeal. On July 3, 1990, the plaintiff, Peter Kelley, sustained a work related injury to his lower back. He received continuous payment for temporary total disability from July 4, 1990, through March 19, 1991.

On February 7, 1991, the plaintiff's only authorized treating physician, James Sabshin, found, after exami-

---

[1] *General Statutes § 31-349 provides in relevant part:* "Compensation for second disability. Payment of insurance coverage. Second Injury Fund closed July 1, 1995, to new claims. Procedure. (a) The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation.

"(b) As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one

nation, that the plaintiff had reached maximum medical improvement with a 25 percent permanent partial disability to his lower back. In his report, Sabshin indicated that the plaintiff could possibly return to work with numerous limitations placed on the type of work he could perform. Further, Sabshin indicated that the plaintiff could benefit from job training or vocational rehabilitation.

On April 29, 1991, the insurer sent a form 36 to the commissioner and to the plaintiff, indicating its intent to reduce payments. The plaintiff's benefits were to be reduced retroactively to February 7, 1991, the date on which the plaintiff reached maximum medical improvement. The plaintiff received reduced payments from March, 1991, through September 24, 1993. The total benefits received, including full and partial benefits, spanned a period of more than three years.

On May 7, 1991, another physician, Willard Greenwald, an independent medical examiner, concurred with Sabshin that the plaintiff was able to return to work on February 7, 1991, with numerous physical limitations. He also concluded, without specifying any date, that maximum medical improvement had been reached.

The defendant employer and the plaintiff executed a voluntary agreement for permanent partial disability dated April 13, 1992. The agreement stated that the date of maximum medical improvement was May 7, 1991. On May 1, 1992, the insurer gave written notice to the fund of its intention to transfer liability pursuant to § 31-349. The fund rejected the transfer, claiming that the notice was not timely.

A formal hearing was held on October 20, 1994. The commissioner, in her finding and award dated January 13, 1995, found that notice was timely and, therefore,

---

hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund . . . ."

that liability for the claim was to be transferred to the fund. The fund filed a petition for review by the review board, which issued its decision on April 23, 1996, affirming the decision of the commissioner. This appeal followed.

Section 31-349 requires that notice of transfer must be made ninety days prior to the expiration of the first 104 weeks of disability, or in the ninety-first week of disability. See *Vaillancourt* v. *New Britain Machine/ Litton*, 224 Conn. 382, 392–94, 618 A.2d 1340 (1993). The fund argues that because the plaintiff was injured on July 3, 1990, and was continuously disabled for more than two years, the 104 week period expired on June 29, 1992, and, therefore, April 2, 1992, was the end of the statutory notice period. Because notice was not given until May, 1992, the fund argues that notice was not timely and that the review board's decision, therefore, must be reversed. The insurer maintains that the plaintiff's voluntary agreement not to seek benefits for the period February to May 7, 1991, adds three months to the term and that the notice was, therefore, timely.

Our Supreme Court recently held in *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 796, 669 A.2d 1214 (1996), that the date by which notice must be given of an insurer's intent to transfer liability to the fund is determined by the period of actual disability, and that the commissioner is charged with determining that period on the basis on all of the evidence presented at the hearing. Particular emphasis is given to medical evidence without consideration of any agreement between the plaintiff and the insurer. See id., 799–800.

In *Six*, the plaintiff suffered an injury on August 4, 1987, and received benefits continuously from August 5, 1987, to April 23, 1990. The plaintiff was released by his treating physician to light duty work with limitations on his activity on January 5, 1988. Notice of intent to

transfer liability to the fund was given on April 23, 1990. The date of maximum medical improvement was May 21, 1990. Subsequently, in an agreement dated February 20, 1992, the plaintiff and the insurer stipulated retroactively, two years after the dates at issue, that " '[t]here would seem to be no entitlement to any disability benefits from 1-5-88 to 9-25-88.' " Id., 797. The commissioner initially found that notice was timely, then corrected his findings and reversed his decision, holding that notice was untimely. Id., 794.

The fund appealed the commissioner's decision to the review board. The board reasoned that the agreement was the plaintiff's acknowledgment that he was not disabled after January 5, 1988, and that the plaintiff's disability did not recommence until May 21, 1990, the date of maximum medical improvement. Id., 795–96. The review board, therefore, excluded the period from January 5, 1988 to the date of notice, April 23, 1990,[2] from its calculation of the period of disability. It concluded that the plaintiff had been disabled for twenty-one or twenty-two weeks at the time of notice and that notice was timely. It, therefore, reversed the decision of the commissioner. Id.

The fund appealed to the Appellate Court from the review board's decision, and the Supreme Court transferred the appeal to itself pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). Relying on the commissioner's findings twelve and thirteen,[3] the fund argued that notice had been untimely because the plaintiff was continuously disabled from August 5, 1987, forward. It argued that notice was therefore due in May,

---

[2] There appears to be some discrepancy in the opinion as to whether the date of notice was April 23 or April 24, 1990.

[3] Finding twelve provides: " 'The employer and insurer respondents completed payments of 104 weeks for disability to the claimant on August 5, 1989.' " *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 794–95 n.5. Finding thirteen provides: " 'The claimant continued to be disabled after January 5, 1988 due to the work related injury to his left knee. Respondent has failed to prove that disability ceased prior to 90 days before expiration of the statutory 104 week period.' " Id.

1989, but not made until April 23, 1990. Id., 796–97. Further, it argued that even if the period set forth in the agreement were eliminated from the calculation, notice was untimely because eliminating that period would have extended the deadline only to January, 1990. The insurer, relying on finding six,[4] argued that notice was timely because the disability began on August 5, 1987, and expired on January 5, 1988, and did not recommence until maximum medical improvement was reached on May 21, 1990. It, therefore, argued that notice was not due until September, 1990, making the April 24, 1990 notice timely. Id., 797.

The Supreme Court, agreeing with the fund, stated that "[f]inding six is based solely on an agreement between the defendant and the claimant that states that '[t]here would seem to be no entitlement to any disability benefits from 1-5-88 until 9-25-88.' Therefore, the fund argues that, by eliminating that time period, the deadline for notice was extended from May, 1989, to January, 1990. Consequently, the notice on April 24, 1990, was untimely." Id., 797. The Supreme Court concluded that "notice to the fund was due either in May, 1989, or in January, 1990, depending on whether the commissioner eliminated the period set out in the agreement upon which finding six is based." Id., 800. The court took note of the fact that it must afford great deference to the commissioner's conclusion that notice was not timely, as long as it was reasonably based on the evidence before him. It reasoned that interpreting finding six as an adoption of the parties' stipulation that there was no disability during the stated period would conflict with several other findings of evidence that a disability existed during that period. Id. It chose instead to interpret finding six as merely a "recitation

---

[4] Finding six provides: " 'The Claimant has acknowledged that he was not entitled to these temporary partial benefits paid from January 5, 1988 in an agreement dated 2/20/92 and signed by the claimant.' " *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 794 n.5.

by the commissioner of a statement made by the claimant and not as an adoption by the commissioner of the substance of the statement." Id., 801.

Moreover, the court noted that the fund, in effect, admitted that the plaintiff was disabled to some degree until September 25, 1988. The court also took note of medical reports spanning the date of injury through 1990, indicating that the plaintiff was disabled to some degree throughout that period. Referring to a physician's decision to release the plaintiff to light work with restrictions, the court stated that, "[i]f the claimant were no longer disabled, there would have been no reason to restrict his work options." Id. The court found that the commissioner's conclusion that notice was untimely was not "based on an incorrect application of the law to the subordinate facts or on an inference illegally or unreasonably drawn from those facts" and reversed the board's decision. Id., 801–802. It is apparent from the court's decision in *Six* that calculation of the date notice of intent to transfer liability to the fund is due must be based on the period of actual disability. This should be determined by the commissioner on the basis of all of the evidence placed before her, in particular the medical evidence, and not based on any agreement between the plaintiff and the insured. Id.

Our Supreme Court has consistently stated that courts of appeal should afford great deference to a commissioner's conclusion that notice to the fund has been timely provided and that it is reasonably based on the evidence before her. The evidence before the commissioner in this case demonstrates unequivocally that there was a continuous period of either full or partial disability from July 3, 1990, forward. The commissioner incorrectly applied the law to the subordinate facts by basing her finding as to the period of actual disability on the voluntary agreement, rather than on the evidence.

The holding in *Six* that the period of actual disability determines the date notice of intent to transfer liability is due, when applied to the undisputed medical reports of Sabshin and Greenwald, *must* lead to the conclusion that notice to the fund was untimely in this case. Despite the presumption in favor of upholding a commissioner's decision, the commissioner's decision in this case must be reversed.

The decision of the compensation review board is reversed and the case is remanded to the board with direction that it reverse the decision of the commissioner.

In this opinion the other judges concurred.