## SILLIA INNOCENT *v.* ST. JOSEPH'S MEDICAL CENTER ET AL.
### (SC 15667)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued November 6, 1997—officially released January 27, 1998

*Michelle D. Truglia*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*Matthias J. DeAngelo*, with whom, on the brief, was *Kevin M. Blake*, for the appellee (named defendant).

*Opinion*

BERDON, J. The principal issue in this appeal is whether the time period during which a claimant returns to work with medical restrictions as a result of a compensable injury, at the same rate of pay she received prior to that injury, shall count toward the calculation of timely notice for purposes of transfer to the defendant second injury fund (fund)[1] under General Statutes (Rev. to 1987) § 31-349 (a).[2] We conclude that because the

[1] Prior to July, 1991, the fund was designated as the second injury and compensation assurance fund. See Public Acts 1991, No. 91-207.

[2] General Statutes (Rev. to 1987) § 31-349 (a) provides in pertinent part: "The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. *As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy*

term "disability" in § 31-349 (a) refers to a claimant's degree of medical impairment, rather than inability to work or loss of earning capacity, the period during which the claimant returned to work with medical restrictions shall be included in the calculation of whether timely notice was given to the fund for purposes of transfer under § 31-349 (a).

The parties stipulated to the underlying facts in this case. On April 12, 1988, the plaintiff, Sillia Innocent (claimant), suffered a compensable injury to her right leg while working for the named defendant, St. Joseph's Medical Center (medical center). The claimant suffered from a preexisting degenerative condition, which made her compensable injury materially and substantially greater than it would have been without the preexisting condition. As a result of that injury, the claimant was temporarily totally disabled from April 13, 1988, until September 18, 1989, during which time she received workers' compensation benefits. Effective September 19, 1989, the claimant was allowed by her treating physician to perform light duty work. The claimant then

_of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire._ Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing benefits under the provisions of this chapter. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. . . ." (Emphasis added.)

returned to work at the medical center on September 19, 1989, subject to that medical restriction. From September 19, 1989, to April 1, 1990, although she was restricted to the type of work she physically could perform, the claimant worked the same number of hours per week and received the same pay as she did prior to sustaining her injury on April 12, 1988. The claimant reached maximum medical improvement on April 1, 1990, and was determined to have a 25 percent permanent partial disability to the right lower extremity.

Section 31-349 (a), provides that, as a condition precedent to an employer's transfer of liability for an employee's permanent disability to the fund, the employer must furnish notice of intent to transfer to the custodian of the fund ninety days prior to the expiration of the first 104 weeks of the claimant's disability. *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 393, 618 A.2d 1340 (1993). The medical center issued its notice to the fund on or about April 12, 1990. The fund rejected the medical center's notice of intent to transfer its liability for the claimant's permanent partial disability payments, claiming that the notice was untimely under § 31-349 (a).

A formal hearing was held before the workers' compensation commissioner (commissioner) on June 20, 1995. The commissioner, solely on the basis of the stipulation entered into by the parties, upheld the timeliness of the medical center's notice of intent to transfer liability to the fund. The commissioner determined that because the claimant had returned to work at her former position as a housekeeper at her regular rate of pay and was not entitled to any workers' compensation benefits between September 19, 1989, and April 1, 1990, that time period would be excluded when determining whether timely notice was given under § 31-349 (a). Pursuant to General Statutes (Rev. to 1987) § 31-301 (a), the fund appealed to the compensation review board

(board),[3] which affirmed the commissioner's decision. The board concluded that there was sufficient evidence in the record to support the commissioner's determination that the claimant, for the period during which she had returned to work, was not disabled for purposes of determining the time period by which notice of transfer to the fund must be given. The fund appealed from the decision of the board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The fund argues that the medical center's notice was untimely because the claimant's period of light duty employment from September 18, 1989, through April 1, 1990, should be counted in determining the 104 week period under § 31-349 (a). The fund contends that all medically documented periods of disability count toward the calculation of timely notice under § 31-349 (a), without regard to whether a claimant is entitled to benefits or suffers any wage loss associated therewith. Under this interpretation, the notice for the claimant's injury was due on or before January 9, 1990, ninety days prior to the expiration of the 104 week period on April 9, 1990. The medical center argues that its notice to the fund was timely because the 104 week period in § 31-349 (a) does not include the time period in which a claimant returns to work at the same rate of pay and for the same number of hours as he or she did prior to a compensable injury. Application of this interpretation of § 31-349 (a) would extend the deadline for notice to the fund in this case to July 22, 1990, rendering the medical center's April 12, 1990 notice timely. We agree with the fund that notice was untimely.

The interpretation urged upon us by the medical center violates a long-standing rule of statutory construc-

---

[3] Prior to July, 1991, the board was designated as the compensation review division. See Public Acts 1991, No. 91-339, § 18.

tion that this court has specifically applied to the Workers' Compensation Act (act), General Statutes § 31-275 et seq. "In construing the act . . . this court makes every part operative and harmonious with every other part insofar as is possible. . . . *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992). In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987)." (Internal quotation marks omitted.) *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 499, 677 A.2d 1356 (1996). Therefore, the meaning of the term disability, where practical, should be applied consistently throughout the act. Id.

We agree with the fund that, under the recent decisions in *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 382, *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 669 A.2d 1214 (1996), and *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 490, the rate of pay received by the claimant and the number of hours worked upon her return to work are not determinative of the time period of her disability under § 31-349 (a). Rather, the determinative factor as to whether the time period is to be included in calculating the 104 week period of disability that triggers the date by which the employer must furnish notice to the fund, is whether the claimant is medically impaired as a result of his or her work-related injury.

In *Vaillancourt*, this court held that "the phrase 'one-hundred-four-week period' [in § 31-349 (a)] refers to the first one hundred four weeks of the claimant's disability, not to the number of weeks the claimant's employer has paid out-of-pocket benefits." *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 393. Although in *Six*, the claimant acknowledged in a signed agreement that he was not entitled to temporary partial

benefits during a nine month period in which he returned to work with medical limitations; *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 794 n.5; we held that the medical evidence offered at the hearing, including the physician's decision to release the claimant to light duty work with " 'limitations of no repetitive knee bending activities' " supported the commissioner's conclusion that the claimant was disabled during the period he returned to work. Id., 800 n.12. If there was any question left unresolved relative to the meaning of disabled with respect to the notice provision in § 31-349 (a), it was put to rest by our decision in *Williams*, in which we held that "[f]or purposes of § 31-349, a claimant's 'disability' is to be evaluated, not in terms of loss of earning capacity, but, rather, in terms of the claimant's medical impairment." *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 492.

The medical center claims that *Williams* is not relevant to this appeal because the claimant in that case would have been eligible for compensation under the act for his permanent partial disability,[4] whereas the claimant in this appeal was not eligible for any workers' compensation benefits when she returned to work. The medical center contends that the claimant in this case was not disabled under any sense of the term in the act during the time period she returned to work with medical restrictions because: (1) she was still employable, and thus, was not totally disabled within the meaning of General Statutes (Rev. to 1987) § 31-307;[5] (2) she

[4] In *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 495, the commissioner determined that the claimant, who suffered 50 percent impairment of his respiratory capacity after reaching maximum medical improvement, was totally disabled because he was unemployable.

[5] General Statutes (Rev. to 1987) § 31-307 provides in pertinent part: "If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of the injury . . . ."

had not yet reached maximum medical improvement and, thus, was not permanently disabled within the meaning of General Statutes (Rev. to 1987) § 31-308 (b);[6] and (3) she was earning the same wages she had earned before her injury and, thus, was not temporarily disabled within the meaning of § 31-308 (a).[7] In sum, the medical center argues that, unlike the claimant in *Williams*, the claimant in this case was not entitled to any workers' compensation benefits during the period she returned to work with medical restrictions.

The medical center's argument ignores the fact that in *Williams*, we held that, even though the term disability is "susceptible of two meanings—physical impairment and loss of earning capacity"; *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 498; "for purposes of § 31-349, 'disability' refers to a claimant's degree of medical impairment." Id. Indeed, just recently, in *Kelley* v. *New England R. Construction Co.*, 45 Conn. App. 448, 454, 696 A.2d 1047 (1997), the Appellate Court determined that even though a claimant had agreed not to seek workers' compensation benefits for a three month period during which he had been authorized to return to work, he was disabled for purposes of § 31-349 (a)

---

[6] General Statutes (Rev. to 1987) § 31-308 (b) provides in pertinent part: "With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than twenty dollars weekly . . . (3) for the loss of one leg at or above the knee, or the complete and permanent loss of the use of one leg . . . ."

[7] General Statutes (Rev. to 1987) § 31-308 (a) provides in pertinent part: "If any injury for which compensation is provided under the provisions of this chapter results in partial incapacity, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury and the amount he is able to earn after such injury . . . ."

because numerous medical limitations were placed on the type of work he could perform during that period. Therefore, the Appellate Court held that the three month period during which the claimant agreed not to seek workers' compensation benefits counted toward the calculation of timely notice under § 31-349 (a). Id.

We recognize that the calculation of the date that notice of intent to transfer liability to the fund is due must be determined by the commissioner on the basis of all of the evidence placed before him. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him [or her] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 798–99. The commissioner, however, concluded that the claimant had provided timely notice solely on the basis of the facts stipulated to by the parties. We conclude that the commissioner's finding that timely notice was given because the claimant was not disabled when she returned to work at full pay, with medical restrictions based upon her compensable injury, was an incorrect application of the law.

The decision of the board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner.

In this opinion BORDEN, KATZ and PALMER, Js., concurred.

MCDONALD, J., dissenting. I disagree.

General Statutes (Rev. to 1987) § 31-349 (a) provides that an employer must notify the second injury fund

(fund) ninety days before the end of a 104 week period for which the employer is responsible for payment of disability benefits to its employee that the employer seeks to transfer its responsibility to the fund. "Section 31-349 provides for shared liability for disability benefits . . . compensation." *Davis* v. *Norwich*, 232 Conn. 311, 318, 654 A.2d 1221 (1995). It is only after the same 104 week period during which the employer is responsible for the payment of disability benefits that the responsibility is transferrable to the fund. It is an axiom of statutory construction that the term "the one-hundred-four-week period" in § 31-349 refers to the same period of responsibility throughout the statute. See *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 431, 572 A.2d 951 (1990); *State ex rel. Hyde* v. *Dowe*, 129 Conn. 266, 271, 28 A.2d 12 (1942).

In this case, the workers' compensation commissioner found that the named defendant, St. Joseph's Medical Center (employer), was not responsible for the payment of disability benefits for 104 weeks at the time notice was given to the fund since the plaintiff, Sillia Innocent (employee), was not entitled to disability benefits from the employer for over six months prior to that notice although she was injured more than 104 weeks before the notice. The majority does not refute that finding. During that time, the employee had returned to her job, which was restricted to light duty work, at full pay. This was good for the employee, good for the employer and good for the fund. If the employee is not entitled to disability benefits, it is difficult to comprehend how the employer is responsible for paying any benefits during that time.

Accordingly, I respectfully dissent.