## TERESA KARUTZ *v.* FEINSTEIN AND HERMAN, P.C., ET AL.
### (AC 19169)

O'Connell, C. J., and Hennessy and Zarella, Js.[1]

Argued February 22—officially released August 29, 2000

*Yinxia Long*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*David A. Kelly*, with whom, on the brief, was *James J. Moynihan*, for the appellees (named defendant et al.).

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

ZARELLA, J. The defendant second injury fund (fund) appeals from the decision of the workers' compensation review board (board) affirming an order by the workers' compensation commissioner (commissioner) that the notice to the fund by the insurer, the defendant Middlesex Mutual Assurance Company (insurer), of intent to transfer liability to the fund was timely under the requirements of General Statutes § 31-349.[2] The fund claims that the board improperly affirmed the commissioner's determination because the notice was untimely. We conclude that the insurer failed to notify the fund in a timely manner and therefore could not transfer its liability to the fund.

In his finding and order, the commissioner found the following facts. The plaintiff, Teresa Karutz, worked as an attorney for the defendant law firm of Feinstein &

[2] General Statutes § 31-349 provides in relevant part: "(a) The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation.

"(b) As a condition precedent to the liability of the Second Injury Fund, the employer or its insurer shall: (1) Notify the custodian of the fund by certified mail no later than three calendar years after the date of injury or no later than ninety days after completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim to the Second Injury Fund . . . ."

Herman, P.C. On September 27, 1990, the plaintiff injured her back during the course of her employment when a file cabinet drawer that she was opening unexpectedly came out of the cabinet. The plaintiff subsequently experienced stiffness and pain in her lower back. She did not seek medical attention, however, until November 12, 1990, when she saw Peter B. Stovell, an orthopedic surgeon. The plaintiff filed a form 30 C in March, 1991, and submitted an employer's first report of occupational injury or disease form on July 1, 1991. From the date of the injury until November 25, 1991, the plaintiff lost no time from work as a result of her injury and was paid her regular salary.

Stovell treated the plaintiff on a regular basis from November 12, 1990, through July 29, 1991. Stovell prescribed anti-inflammatory drugs, a home exercise program, physical therapy and diagnostic tests. On the basis of Stovell's and other examining physician's reports, the plaintiff was found to be temporarily totally disabled from November 25, 1991, through November 30, 1992. The insurer paid temporary total disability benefits during this period of time. The temporary total disability benefits were terminated and payments ceased on November 30, 1992. The plaintiff asserted a claim for temporary partial disability benefits for the period from November 30, 1992, to July 12, 1994.

Subsequently, the commissioner conducted informal hearings. The insurer and the plaintiff agreed that the plaintiff would be entitled to an award of thirty-six weeks of temporary partial disability benefits covering the period from November 30, 1992, to July 12, 1994.[3] This award by stipulation was approved by the commissioner on August 8, 1995. The plaintiff, according to

---

[3] This period represents eighty-four and one-half weeks. The settlement agreement did not designate which part of the eighty-four and one-half weeks was covered by the agreement.

Stovell's assessment, reached maximum medical improvement on July 12, 1994, and was rated with a 15 percent permanent partial disability of her back.

On August 2, 1993, the insurer notified the fund of its intention to transfer the liability to the fund pursuant to § 31-349. The insurer perfected notice to the fund on October 12, 1993. Section 31-349 (b) provides that as a condition precedent to an employer's transfer of liability to the fund for an employee's permanent disability, the employer must furnish notice of intent to transfer to the custodian of the fund ninety days prior to the expiration of the first 104 weeks of a claimant's disability. *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 393, 618 A.2d 1340 (1993). The fund contested the transfer, arguing that the insurer's notice was late because the notice period began to run on September 28, 1990, the date of the injury. The insurer requested a formal hearing on the matter, which was heard on July 29, 1997.

The commissioner found that the notice to the fund was timely and that the insurer is therefore entitled to transfer to the fund responsibility for the payment of benefits after the 104th week of disability, which was reached on October 23, 1994. Further, the commissioner found that the insurer was entitled to reimbursement from the fund for all benefits paid to the plaintiff after October 23, 1994.

The fund appealed to the review board from the commissioner's decision. The fund argued that the commissioner improperly found that the insurer provided timely notice of its intent to transfer liability to the fund because the plaintiff's actual periods of medical impairment established that notice was late. In an opinion dated December 18, 1998, the board affirmed the commissioner's decision to transfer liability to the fund. This appeal followed.

The fund claims that notice was untimely because the plaintiff was disabled from September 27, 1990, the date of her injury, to November 25, 1991, even though she lost no time from work during that period as a result of the injury and was paid her full salary. The fund also claims that she was disabled for purposes of that statute from December 1, 1992, to October 12, 1993, and maintains that the commissioner's restrictive definition of "disability" led to the erroneous conclusion that the insurer timely complied with the statutory notice provisions.

The issue of timeliness centers on the meaning of the word "disabled" contained in § 31-349. The terms "disabled" and "disability" are not defined in the workers' compensation statutes. Recent decisions of our Supreme Court, however, have established the meaning of "disability" for purposes of § 31-349.

In *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 498, 677 A.2d 1356 (1996), the court stated: "In the context of § 31-349, the term 'disability' is susceptible of two meanings—physical impairment and loss of earning capacity. 1C A. Larson, Workmen's Compensation (1995) § 57.11. As Larson observes, these two 'ingredients' generally occur concurrently. There are instances, however, such as the present case, in which they do not.

"'Permanent disability' is not defined within Connecticut's Workers' Compensation Act. General Statutes § 31-275 et seq. 'Previous disability,' however, is defined within § 31-275 (20) as 'an employee's preexisting condition caused by the total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye resulting from accidental injury, disease or congenital causes, or other *permanent physical impairment.*' . . . 'In construing the act . . . this court makes every part operative and harmonious with every other part insofar as is possible.' . . . *Weinberg* v. *ARA Vending Co.*, 223

Conn. 336, 341, 612 A.2d 1203 (1992). 'In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation.' *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). Thus, the meaning of the term 'disability' should not vary simply because it is modified by 'permanent' rather than 'previous.' Accordingly, we define 'disability,' for the purpose of § 31-349 (a), to refer to a claimant's physical impairment. Moreover, this definition is consistent with our case law. *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 800–801, 669 A.2d 1214 (1996) (medical records admitted to demonstrate disability); *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 359, 349 A.2d 847 (1974) (claimant's heart disease considered 'preexisting permanent physical impairment' despite fact that it 'had neither manifested itself so as to be a hinderance to obtaining employment nor come to the attention of the employer'); *Rowe* v. *Plastic Design, Inc.*, 37 Conn. App. 131, 135, 655 A.2d 270 (1995) (prior injury not 'a first injury because it did not result in a permanent physical impairment')." (Emphasis in original.) *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 498–99.

Thus, a person can be disabled for the purposes of § 31-349 even though he or she can carry on all the facets of his or her employment. The test is whether a claimant is physically impaired, not whether there exists a de facto inability to earn a wage.

The second principle necessary for the proper disposition of this matter was set forth in *Innocent* v. *St. Joseph's Medical Center*, 243 Conn. 513, 705 A.2d 200 (1998). In *Innocent*, the fund appealed from the board's decision that affirmed the transfer of liability to the fund, claiming that under § 31-349 (a) the employer's notice was untimely. Id., 517. The employer argued that the 104 week period required in § 31-349 (a) did not

include a time period during which the claimant had returned to light duty work. Id. The fund contended that all medically documented periods of disability count toward the calculation of timely notice under § 31-349 (a). Id. Thus, the fund argued that the notice was untimely because the claimant's period of light duty employment should be counted in determining the 104 week period under § 31-349. Id.

Our Supreme Court agreed with the fund and held that "under the recent decisions in *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 382, *Six* v. *Thomas O'Connor & Co.*, [supra, 235 Conn. 790], and *Williams* v. *Best Cleaners, Inc.*, supra, 237 Conn. 490, the rate of pay received by the claimant and the number of hours worked upon her return to work are not determinative of the time period of her disability under § 31-349 (a). Rather, the determinative factor as to whether the time period is to be included in calculating the 104 week period of disability that triggers the date by which the employer must furnish notice to the fund, is whether the claimant is medically impaired as a result of his or her work-related injury." Id., 518.

With those two principles in mind, we now review the decision of the board. We recognize that the calculation of the date that notice of intent to transfer liability to the fund is due must be determined by the commissioner on the basis of all of the evidence placed before him. "[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 798–99.

The commissioner, however, concluded that the plaintiff had provided timely notice on the ground that

the disability period did not begin on the date of injury. The commissioner found that "[w]hile the [plaintiff] may have been suffering from persistent pain and stiffness, and [was] treating with Dr. Stovell from November 12, 1990, until November 25, 1991, she was able to perform her regular job duties at her place of employment and was paid her regular salary." Further, the commissioner found that "the [plaintiff] lost no time from work from her regular job during the period from September 27, 1990, until November 25, 1991, and was paid her regular salary." Therefore, the commissioner concluded that "the notice to the second injury fund was timely filed under the provisions of Section 31-349 . . . ." The commissioner, therefore, based his finding of disability on the plaintiff's ability to perform her regular job duties rather than on the date of medical impairment. We conclude that the commissioner's finding, i.e., that timely notice was given because the plaintiff was not disabled while she continued to work at full pay, was an incorrect application of the law.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to reverse the decision of the commissioner and to order further proceedings in accordance with this opinion.

In this opinion the other judges concurred.