## NANIK KARNANE *v.* SAKS FIFTH AVENUE ET AL.
### (AC 21417)

Dranginis, Flynn and Daly, Js.

Argued October 15—officially released December 18, 2001

*Michael M. Buonopane,* for the appellants (named defendant et al.).

*Michelle D. Truglia,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant second injury fund).

FLYNN, J. The defendants, Saks Fifth Avenue (Saks) and its insurer, AIG Claims Services, Inc. (AIG), appeal from the decision of the workers' compensation review board (board) reversing the decision of the workers' compensation commissioner for the seventh district (commissioner) transferring liability for the payment of disability benefits awarded to the plaintiff, Nanik Karnane, to the defendant second injury fund (fund). The principal issue to be decided in this appeal is whether the board properly determined that Saks and AIG did not timely file notice to transfer liability to the fund pursuant to General Statutes (Rev. to 1993) § 31-349 (b), as amended by Public Acts 1993, No. 93-429, § 2 (P.A. 93-429).[1] We conclude that Saks and AIG failed to notify the fund in a timely manner and, therefore, we affirm the decision of the board.

Certain underlying facts found by the commissioner are not in dispute. On July 16, 1993, the plaintiff, who is not a party to this appeal, was employed as a salesperson by Saks and was working at its Stamford store when he slipped and fell, sustaining injuries to his right shoulder and knee. For the first eight and one-half weeks after the fall, the plaintiff was unaware of the severity of his injuries and self-medicated with Tylenol for his pain. In actuality, he had suffered a torn rotator cuff in his shoulder and torn medial meniscus in his knee. The plaintiff did not seek medical care for his injuries until September 14, 1993. He continued to work at his job from the date he was injured until March 28, 1994, when he underwent surgeries for the injuries to

---

[1] General Statutes (Rev. to 1993) § 31-349 (b), as amended by Public Acts 1993, No. 93-429, § 2, provides in relevant part: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, no earlier than one year and no later than ninety days before the expiration of the first one hundred four weeks of disability, notify the custodian of the second injury fund of the pending case . . . ."

both his shoulder and knee. The plaintiff received temporary total disability benefits from March 28, 1994, through August 26, 1996. He did not, thereafter, return to his job at Saks, having retired upon reaching the age of sixty-five. Saks and AIG first provided notice of their intent to transfer liability to the fund on May 30, 1995.[2]

After a formal hearing, the commissioner found, in his revised findings and award, that there was no medically documented period of disability for the plaintiff between July 17, 1993, and March 28, 1994, and, accordingly, the period of disability that began the notice period for purposes of transferring liability under § 31-349 (b) began on March 28, 1994. The commissioner further found that the May 30, 1995 notice of transfer was timely because, pursuant to the notice requirements of No. 95-277 of the 1995 Public Acts (P.A. 95-277),[3] the notice deadline was June 28, 1996. As such, the commissioner ordered liability transferred to the fund. The fund filed a petition for review by the board. The board reversed the decision of the commissioner. It concluded that the commissioner improperly calculated the notice deadline under the 1995 version of the statute, rather than under the 1993 version, and also improp-

[2] On September 22, 1995, Saks and AIG reissued notice to the fund pursuant to General Statutes (Rev. to 1995) § 31-349 (e), as amended by Public Acts 1995, No. 95-277, § 3, which provides in relevant part: "All claims for transfer of injuries for which the fund has been notified prior to July 1, 1995, shall be deemed withdrawn with prejudice, unless the employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer pursuant to the provisions of this section. . . ."

[3] Under the requirements of General Statutes (Rev. to 1995) § 31-349 (b), as amended by Public Acts 1995, No. 95-277, § 3, the employer or its insurer is required to notify the fund "no later than three calendar years after the date of injury or no later than *ninety days after* completion of payments for the first one hundred and four weeks of disability, whichever is earlier, of its intent to transfer liability for the claim . . . ." (Emphasis added.) Under that version of § 31-349 (b), Saks and AIG would have had 180 additional days in which to provide notice of their intent to transfer liability to the fund.

erly determined that March 28, 1994, the date of the plaintiff's surgeries, was the date that disability began. It further concluded that liability should not have been transferred to the fund because Saks and AIG did not provide timely notice pursuant to the applicable 1993 version of § 31-349 (b). This appeal followed.

Although Saks and AIG now concede that the 1993 version of § 31-349 (b) governs their timeliness claim and that the board was correct in concluding that the commissioner improperly applied the 1995 version, they nonetheless contend that the commissioner's ultimate decision that the notice was timely should stand. They claim that the commissioner's erroneous application of the notice requirements of P.A. 95-277 should not negate his conclusion that notice was timely because their May 30, 1995 notice was timely under either version of the statute if the notice period is calculated using the March 28, 1994 date as the date that disability began. Specifically, they contend that the decision of the board was improper because the commissioner's conclusion that there was no medically documented period of disability until March 28, 1994, was adequately supported by evidence in the record and that it was for the commissioner, and not the board, to assess the credibility of the medical evidence presented at the hearing. They also claim that even if this court determines that the disability of the plaintiff began sometime before March 28, 1994, the date of his surgeries, the earliest that the disability could have begun was on September 14, 1993, the date when he first sought treatment because there could be no determination regarding his disability until he was actually seen by a physician.

The fund disputes the commissioner's finding that "there is no medically documented period of disability of the plaintiff between July 17, 1993, and March 28, 1994," and takes strong exception to the finding that

"[a]s a result thereof, the period of disability which begins the notice period is March 28, 1994."

We first note our standard of review. "[T]he power and duty of determining the facts rest on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Thompson* v. *Roach*, 52 Conn. App. 819, 824, 728 A.2d 524, cert. denied, 249 Conn. 911, 733 A.2d 227 (1999).

Our analysis begins with a review of the law pertaining to the second injury fund. The second injury fund is a creature of statute and was "established by the legislature . . . to encourage employers to hire potential employees with preexisting disabilities or injuries." *Cece* v. *Felix Industries, Inc.*, 248 Conn. 457, 462–63, 728 A.2d 505 (1999). That legislation permits an employer to limit its liability for making workers' compensation payments to a worker who sustains some injury during the course of his employment, and who also has sustained some prior first injury that makes the second job related injury "materially and substantially greater" than that which would have otherwise resulted had there not been the prior injury. General Statutes § 31-349 (a). After the employer has paid benefits for the second injury for a period of time, the employer may move to shift to the fund its liability to make payments of benefits to the employee, provided the employer or its insurer gives a timely notice, as provided in § 31-349 (b).

We now turn to the claim by Saks and AIG that they gave timely notice of their intent to transfer liability to the fund pursuant to General Statutes (Rev. to 1993) § 31-349 (b). Saks and AIG gave notice to the fund

on May 30, 1995. Section 31-349 (b) requires that as a condition precedent to the employer's transfer of liability to the fund for an employee's disability, either the employer or its insurer must first provide notice of its intent to transfer liability to the fund no earlier than one year and no later than ninety days before the expiration of the first 104 weeks of a plaintiff's *disability*. In the present case, if the period of disability commenced on the day of the plaintiff's March 28, 1994 shoulder and knee surgeries, as the commissioner found, then statutory notice to transfer liability was due between March 27, 1995, and December 26, 1995. Under that interpretation of when disability commenced, the May 30, 1995 notice given to the fund by Saks and AIG was timely. If the period of disability commenced on September 14, 1993, the day of the plaintiff's first medical visit, as was argued by Saks and AIG, then statutory notice was due between September 12, 1994, and June 13, 1995. Under that interpretation, the May 30, 1995 notice also was timely. In contrast, if disability actually commenced on July 16, 1993, the date of injury, as the board concluded, then the commissioner was required to find that the deadline for giving notice was April 14, 1995. Under that interpretation, the May 30, 1995 notice was untimely.

"The issue of timeliness centers on the meaning of the word 'disabled' contained in § 31-349." *Karutz* v. *Feinstein & Herman, P.C.*, 59 Conn. App. 565, 569, 757 A.2d 680, cert. denied, 254 Conn. 949, 762 A.2d 901 (2000). Although the terms "disabled" and "disability" are not defined in the workers' compensation statutes, recent decisions of this court and our Supreme Court have established the meaning of "disability" for purposes of § 31-349. In *Karutz*, we held that "disability" refers to a plaintiff's physical impairment and that "a person can be disabled for the purposes of § 31-349 even though he or she can carry on all the facets of his

or her employment. The test is whether a claimant is physically impaired, not whether there exists a de facto inability to earn a wage." Id., 570; see also *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 498, 677 A.2d 1356 (1996) ("disability" refers to degree of medical impairment for purposes of § 31-349). Our Supreme Court has held that "the phrase 'one-hundred-four-week period' [contained in § 31-349 (b)] refers to the first one hundred four weeks of the plaintiff's disability, not to the number of weeks the plaintiff's employer has paid out-of-pocket benefits." *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 393, 618 A.2d 1340 (1993). Thus, under the holdings in *Karutz* and *Vaillancourt*, a plaintiff's "disability" begins, for purposes of § 31-349 (b), when he or she experiences some physical impairment and not when the plaintiff becomes unable to work or begins to receive disability benefit payments.

With those definitions of "disability" in mind, we turn to the decision of the commissioner. In his revised findings, the commissioner included findings that the plaintiff continued to work at Saks until the morning of his surgery, that he received temporary total disability payments and that he received those payments from the date of the surgery onward. Based in part on those findings, the commissioner determined that the plaintiff's period of "disability" began to run on the date of his surgery, March 28, 1994. We conclude that under *Vaillancourt* and *Karutz*, those factual findings are immaterial in determining when the plaintiff's disability commenced and indicate that the commissioner improperly relied on those facts in reaching his decision.

Furthermore, § 31-301-3 of the Regulations of Connecticut State Agencies provides in relevant part: "The finding of the commissioner should contain only the ultimate relevant and material facts essential to the case in hand and found by him, together with a statement

of his conclusions and the claims of law made by the parties. . . ." Pursuant to the holdings of *Karutz* and *Vaillancourt*, the relevant and material facts are those that reflect when the plaintiff became physically impaired. Clearly, under *Karutz* and *Vaillancourt*, the commissioner's inclusions of fact concerning when the plaintiff stopped work and when the plaintiff actually received disability payments were not material facts that were essential to determining when "disability" commenced, and demonstrate that the commissioner's conclusion that "disability" did not occur until the date of surgery was the result of a misapplication of the law.[4]

Moreover, although the claim by Saks and AIG that the commissioner's determination that the date that the plaintiff underwent surgeries to correct his injuries began the disability period was supported by evidence in the record and was reasonable, we agree with the board's conclusion that it was unreasonable in light of the commissioner's relevant and material findings of fact, the medical evidence presented at the hearing and the applicable law.

Although it was reasonable to conclude that the plaintiff was not ready to return to work or engage in other of life's normal activities on the day that his surgeons put down their knives and finished their suturing, it was not reasonable to conclude, as the commissioner did, that the day of the surgery was the first day of the plaintiff's impairment and disability. The following revised findings of the commissioner are consistent

---

[4] We note that the record shows that the commissioner's initial and unrevised findings and award contained a "discussion" section, in which the commissioner expressed his strong opinion that our Supreme Court's ruling in *Vaillancourt* was unwise. Our Supreme Court's decision in *Vaillancourt* is, however, controlling. Just as "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them"; (internal quotation marks omitted) *State* v. *Thomas*, 62 Conn. App. 356, 364, 772 A.2d 611, cert. denied, 256 Conn. 912, 772 A.2d 1125 (2001); so, too, is the commissioner.

with the July 16, 1993 date of injury being the date when the plaintiff's impairment began. First, the commissioner found that the plaintiff's injuries to both his right shoulder and knee occurred on July 16, 1993. Second, he found that the plaintiff had experienced pain for the first eight and one-half weeks after he sustained those injuries for which he self-medicated, and that he was not aware of the seriousness of the injuries until he sought treatment with his physician, Nicholas V. Polifroni. Third, the commissioner found that the plaintiff underwent surgeries related to those injuries on March 28, 1994. Those findings are consistent with a physical impairment of parts of the body occurring on July 16, 1993, and are not consistent with an impairment commencing on the date of surgical repair of those injuries some eight months later.

We also are not persuaded by the claim by Saks and AIG that the earliest time that the plaintiff's disability could have occurred was September 14, 1993, when he was first treated for his injuries and when medical documentation of those injuries began. There were abundant and uncontradicted medical records that were consistent with the date of impairment occurring on the date of the injury. From that date forward, the plaintiff described initial pain, was required to rest during the workday and had to have coworkers at Saks perform the parts of his job that he was unable to undertake.

A physician can opine about the etiology of occupational disease or physical impairment even though he or she did not examine the patient on the date that the disability first occurred or the injury was first sustained. Polifroni testified that the plaintiff was medically disabled prior to the plaintiff's first visit to him. A second physician, Craig Foster, found that the plaintiff's shoulder and knee were injured in the July 16, 1993 slip and fall, and that since that time the plaintiff suffered from

chronic symptomatic shoulder discomfort related to his fall. Also, there was additional medical documentation that described a continuing course of treatment and evaluation of the plaintiff's condition until surgical intervention occurred. Moreover, the commissioner made no finding indicating that any of that evidence was unworthy of credit. The record contains no evidence that indicates that the plaintiff experienced any subsequent trauma or that some other event had an impact on the extent of his injuries after his fall.

We conclude that the commissioner's finding that the plaintiff's disability, which *Karutz* v. *Feinstein & Herman, P.C.*, supra, 59 Conn. App. 567, defines as physical impairment, did not occur until March 28, 1994, is wholly unsupported by the evidence. Reason tells us, in light of the commissioner's findings and the overwhelming medical evidence of impairment commencing on July 16, 1993, that the impairment at issue in the present case, resulting from a torn rotator cuff and torn medial meniscus, occurred on July 16, 1993, as the board concluded and not on March 28, 1994, as the commissioner found. Accordingly, we affirm the decision of the board.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.