# DONALD HOLMES *v.* G.A. MASONRY CORPORATION ET AL.
## (AC 22861)

Dranginis, Flynn and Bishop, Js.

Argued February 25—officially released May 6, 2003

*Yinxia Long,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Maureen D. Regula* and *William J. McCullough,* assistant attorneys general, for the appellee (defendant second injury fund).

*Erik S. Bartlett,* with whom, on the brief, was *David C. Davis,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. This is an appeal by the defendant second injury fund (fund) from the decision of the workers' compensation review board (board). In its decision, the board affirmed the determination of the workers' compensation commissioner for the sixth district (commissioner) that the workers' compensation insurance carrier, the defendant Employers Insurance of Wausau (Wausau), had timely notified the fund of its intent to transfer liability, pursuant to General Statutes (Rev. to 1987) § 31-349, for the plaintiff employee's compensation. On appeal, the fund claims that the board improperly affirmed the commissioner's determination that Wausau timely notified the fund of the transfer under § 31-349. We affirm the decision of the board.

The following facts and procedural history are relevant to our discussion of the fund's appeal.[1] On January 15, 1988, while in the employ of the defendant G.A. Masonry Corporation (Masonry), the plaintiff, Donald Holmes, sustained a compensable back injury. Subsequently, the commissioner determined that at the time of the injury, Holmes had a preexisting permanent impairment consisting of asymptomatic spondylolisthesis and degenerative disc disease, and that the injury had rendered his overall disability materially and sub-

[1] The plaintiff's workers' compensation claim and issues ancillary to it have been the subject of various hearings, including previous appeals to the board. We recite only that part of the record that is germane to the dispositive issue in this appeal.

stantially greater. At the time of that injury, Wausau was Masonry's workers' compensation insurance carrier. As a consequence of his injury, Holmes was found to be temporarily totally disabled from January 16 through February 15, 1988, when he returned to work without medically imposed physical restrictions. Soon thereafter, Holmes left Masonry and in March, 1988, began employment with L.G. DeFelice, Inc. (DeFelice), as a heavy equipment operator. Holmes continued to work until May 13, 1991, when his treating physician determined that he was temporarily totally disabled.

On June 24, 1991, pursuant to General Statutes (Rev. to 1987) § 31-349 (a),[2] Wausau notified the fund of its intention to transfer liability to the fund for Holmes' compensation. Section § 31-349 (a) requires notice of intent to transfer liability ninety days prior to the expiration of the first 104 weeks of a claimant's disability from a second injury. In response, the fund claimed that the June 24, 1991 notice was untimely. The fund therefore asserted that it had no responsibility toward Holmes. The commissioner disagreed. Finding that Wausau's notice was timely, the commissioner determined that Holmes' need for medical care and his disability were one-third due to the January 15, 1988 injury and two-thirds due to subsequent repetitive trauma that had occurred over the subsequent period of approximately three years.

The fund's claim of untimeliness is premised on its assertion that Holmes' "disability" dates from January 15, 1988, the date of his injury, and that it was continuous for the several months following his injury, including the time period to the date of Wausau's notice.

---

[2] General Statutes (Rev. to 1987) § 31-349 (a) provides in relevant part: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case . . . ."

The latter contention primarily is based on Holmes' testimony that he continued to experience low back pain throughout the disputed time periods starting with the date of his injury. On that basis, the fund claims that Wausau's notice, sent approximately 179 weeks after the January 15, 1988 injury, was untimely. Although the fund has stipulated that this case medically qualifies for transfer under § 31-349, it contends that to be timely under § 31-349, Wausau's notice had to be filed by October 14, 1989.

In response, Wausau argues that for a substantial period of time after the date of his injury, Holmes was not, in fact, disabled and that the periods in which he was not disabled should not be counted in calculating whether its notice to the fund was timely. Wausau's contention that Holmes was not continuously disabled after his January, 1988 injury is based on its view that the term "disability" as utilized in § 31-349 imports the notion of physical impairment, and that for substantial periods between his January, 1988 injury and Wausau's notification to the fund, Holmes was not physically impaired. By excluding those disputed periods of "non-disability," Wausau claims, its June 24, 1991 notice to the fund was timely. Additional facts will be set forth as necessary.

The dispositive issue in the fund's claim is whether Wausau's June 24, 1991 notice to the fund was timely. The resolution of the issue, in turn, requires an understanding of the term "disability" as utilized in § 31-349 and an application of that understanding to the facts properly found by the commissioner. The fund argues that the evidence provided to the commissioner of Holmes' back pain was sufficient to compel a determination that he was continuously "disabled" from the date of the January, 1988 injury and that the commissioner misapplied controlling decisional law in determining to the contrary. We disagree.

The "terms 'disabled' and 'disability' are not defined in the workers' compensation statutes. Recent decisions of our Supreme Court, however, have established the meaning of 'disability' for purposes of § 31-349 . . . [as a claimant's physical impairment]." *Karutz* v. *Feinstein & Herman, P.C.*, 59 Conn. App. 565, 569, 757 A.2d 680, cert. denied, 254 Conn. 949, 762 A.2d 901 (2000). Furthermore, "[w]e determined in *Karutz* that a person can be disabled for the purposes of § 31-349 even though he or she can carry on all the facets of his or her employment. The test is whether a claimant is physically impaired, not whether there exists a de facto inability to earn a wage. . . . We also noted, as decided by our Supreme Court in *Innocent* v. *St. Joseph's Medical Center*, 243 Conn. 513, 705 A.2d 200 (1998), that the rate of pay received by the claimant and the number of hours worked upon her return to work are not determinative of the time period of her disability under § 31-349 (a). Rather, the determinative factor as to whether the time period is to be included in calculating the 104 week period of disability that triggers the date by which the employer must furnish notice to the fund, is whether the claimant is medically impaired as a result of his or her work-related injury."[3] (Internal quotation marks omitted.) *Gillis* v. *White Oak Corp.*, 73 Conn. App. 523, 529–30, 808 A.2d 712 (2002), cert. granted on other grounds, 262 Conn. 936, 815 A.2d 136 (2003). From those cases, we conclude that the statutory term disability connotes medical impairment.

We believe that the determination of whether a claimant is physically impaired is a question of fact, and the commissioner, as the fact finder, is entrusted with that task. See *Thompson* v. *Roach*, 52 Conn. App. 819, 824, 728 A.2d 524, cert. denied, 249 Conn. 911, 733 A.2d 227

---

[3] A physician's restriction of a claimant to light duty employment is an example of a medical restriction. See *Innocent* v. *St. Joseph's Medical Center*, supra, 243 Conn. 513.

(1999). As the fact finder, the commissioner may "reject or accept evidence and [may] believe or disbelieve any expert testimony." (Internal quotation marks omitted.) *Riggio* v. *Orkin Exterminating Co.*, 58 Conn. App. 309, 317, 753 A.2d 423, cert. denied, 254 Conn. 917, 759 A.2d 507 (2000). "Our standard of review of the board's determination is clear. [T]he [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. Although the [board] may take additional material evidence, this is proper only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 500–501, 677 A.2d 1356 (1996).

I

As to the fund's first argument, the board properly concluded that "[i]n his 1999 and 2001 decisions [in this matter], the trier stressed that [Holmes] did not have a medical impairment or restriction during most of the time span relevant to the calculation of the 104 week disability period set forth in § 31-349. . . . The trier found that it was not severe enough to constitute such an impairment, at least not until May, 1990." On the basis of that finding, the fund was ordered to accept liability for Holmes' claim, as provided by statute.

It is neither the province of the board nor of this court to overturn a commissioner's factual finding on review if there is support in the record for that finding,

even if the record would support a contrary finding. See *D'Amico* v. *Dept. of Correction*, 73 Conn. App. 718, 725, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003).

## II

We similarly are not persuaded by the fund's argument that the board misinterpreted controlling case law by defining disability in terms of loss of earning capacity. The board's decision made clear that earning capacity did not serve as a basis for determining whether Holmes was disabled. It explicitly embraced pertinent decisional law that "a person can be disabled for the purposes of § 31-349 even though he or she can carry on all the facets of his or her employment." *Karutz* v. *Feinstein & Herman, P.C.*, supra, 59 Conn. App. 570. The commissioner found that in accordance with the board's direction, Holmes' "ability to perform his usual labor between February 16, 1988, and May 13, 1991, does not provide a basis supporting the conclusion of timely notice, except insofar as it flows from the fact that Holmes was not physically impaired during said period." Additionally, the commissioner found that "there is no credible evidence which was presented that Holmes was medically restricted between February 16, 1988, and May 13, 1991." Accordingly, the conclusions drawn by the board from the facts found must stand because they resulted from a correct application of the law to the subordinate facts or from an inference legally or reasonably drawn from them.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.